May it please the court. I am John Daniels. I'm representing the appellants Loadd and Coadd. This is an appeal from the tax court. Lift the microphone up a little bit. You're a little taller than the lifestyle. Okay. Is that better? Better, yes. Okay. The central argument before you today is whether a substantial reoccurring monthly expense should be allowed as a deduction under Section 162 as an ordinary and necessary expense in the year incurred in carrying on a trade or business of the taxpayer, or whether that expense should be required to be capitalized under the uniform capitalization rules of Section 263A. The primary expense at issue is one that was classified as rent on the income tax returns of the appellants and as marketing display rent on the appellant's income tax statements, or pardon me, on their income statements, which were trial exhibits 8P and 13P of the stipulated exhibits at the trial court. As I understand it, the basic idea is if inventory, for example, is stored in a warehouse somewhere, that has to be capitalized and the expenses of storing it are recovered as each item of inventory is sold? That is, I believe, the thrust of Section 263A, yes. Okay. Now here we have a situation where it's not being stored in a warehouse. It's being utilized on a lot in a well-traveled area so that the exposure is good, and you're maintaining that this is not a sales expense to maintain that there in that location because it's storage. Well, we would be maintaining that it is not storage, that the purpose for us to pay for the rent for those facilities is to sell the merchandise or the inventory. Right. Not to store the merchandise. So it's not storage. It, in effect, is to sell the product. That is correct. Okay. Storage is an expense under Section 263A that would require capitalization. My reading and concern is that it's an expensive marketing, and I don't think there's any question that it is an expensive marketing except that the regulations apply, and even though it might be an expensive marketing, the regulations are pretty specific that the rent has to be capitalized, and that's what I think the government's position is, and I'm not sure if you can overcome that because I know it could go either way. Well, as I indicated in the trial exhibits, and that's why I brought attention to the income statements of the taxpayer, they're classified, all of these expenses are classified under their marketing and selling expenses. It's called marketing display rent. Yes, I know. And so what you're saying is if the regulations or the plain meaning and construction of the word rent means one thing, and marketing has a plain meaning as well, which is something that's used to sell, that a retail location is the primary reason you spend the big bucks in the high traffic areas, like Bloomingdale's down the street, is to attract customers. And the question, and I think the rub in this particular case, is that because we use independent salespeople, which is – Well, not unless you use independent salespeople. You sell it to those people. Yes, we do. And you make an argument that it's unfair. This is just – it's not really a sale. They really just handle it. We just call it a sale. Well, you know, people structure these things for reasons. I'm not sure why you decided, instead of having an ordinary salesman, to sell it to them and then have them sell it to somebody else. There must be some advantage to you for doing that, probably a tax advantage that you either thought you were going to get or got. But, you know, you pick the structure, and then that's the structure you pick. You get the consequences also. There's nothing terribly logical about tax regulations or terribly just, and you don't look at them and say, gee, this is unfair. Look at these poor people. Well. You know, tax regulations are what they are, and you apply them by what they say. This is the one time in the law of those people who say, well, you just look at it, you read it, you do what it says. It's very easy. A machine could do it. Tax regulations are probably the only kind of law that really fit that. You don't need judges. You just, anybody could do it. But, you know, why did you pick the system of having a salesman and then selling him the house and having him sell the house to the buyer? In the Ninth Circuit, in the Springfield case, there's nothing wrong with employing independent salespeople. If there's anything wrong with it, you can do it. That's fine. And we did it. Who cares whether you did it? You just get whatever the tax consequences are. Usually when you do that kind of thing, it's to avoid taxes. Well, in that instance, you would probably be avoiding employment taxes, but the law is replete of this. When you get into this area, you can have, as Susie's zoo would say, you have to take all of the facts and the circumstances. And if this, even though we chose to have an independent contractor to pass title, which we indicated in the briefs and in the testimony why we did, which was to avoid the administrative costs of complying with 192 potential jurisdictions in 22 states. It's an efficiency to have. That is all good, but as Judge Reinhart says, then if you decide to do that for the reasons you specify, haven't you bid right into the regulations, which say you have to sell it to the ultimate purchaser in order to be a retailer and deduct these expenses? Well, that is what the regulations do say. However, the regulations do not have to be interpreted if they lead to absurd results. And let's take that as an example, which is the very basic principle of accounting, which is matching, which is one of the reasons we have Section 263A, which is to track inventory-related costs. Well, under the matching principle, expenses are normally deducted in the year incurred. Here they're trapped. So because our inventory basically is our display lots that we're marketing and selling at the beginning of the year and then at the end of the year, that's what we have. So the test period for that is the end-of-year inventory. If we wanted to get 12 months of expenses, we could easily pass title to those independent salespeople and say you're the owner at the end of the year. And if we did, we would then be able to bunch approximately two years of expenses in one year, which means now we can play the games, which is not what 263 was designed to say. It seems to me that's what everybody does with tax law. We all play the games. You try to reduce the taxes by structuring it one way. If you can structure it, bunching it that way, that's your privilege as an American taxpayer. They write regulations to try to catch you. You figure structures to try to avoid it. It's not a very admirable system, but that's the best they can do with taxes. They're so complicated. You get volumes and volumes of these regulations, and it keeps the American lawyer employed. So you do play the game. They try to catch you. You try to get out of it. And if you get stuck with the regulation, that's the way it goes. Well, I like to be somewhat cynical view of taxes. I think that appears a little more cynical. I still try to apply some logic to the regulations and the tax code. You admitted that under the regulation, it's taxable. No, I didn't. I said that the regulations, if you consider a retail sale, if you consider the regulations being correct, that this salespeople that we employ because we pass title through him, where he has no risk of ownership, if the ultimate consumer doesn't purchase the manufactured house, he doesn't sell the manufactured house, in 85 percent of the transaction, he never sees the title to the property. But, yes, he is responsible for paying the state and local taxes that are associated with that sale as opposed to us. You've got less than a minute left, but we'll give you two minutes for rebuttal anyway. The time is up. Thank you, Your Honor, and may it please the Court. My name is Kathleen Lyon, and I represent the Commissioner in this case. And I wanted to address just a few things that came up. Would you speak up a little? I'm sorry. Thank you. I wanted to address first the suggestion that our position is that these are marketing and selling expenses, but only because they're listed as expenses that must be capitalized, that that's the only reason they must be capitalized. We don't agree that they are marketing and selling expenses to begin with. Well, let's go back, because that was a very technical area. And the way they proceeded before they had the independent contractors, that was clearly a marketing expense, wasn't it? I'm not sure that it was. I mean, that, of course, was not litigated. Under these particular regulations it would be. Maybe I saw somewhere in the briefs, maybe I just misread it, that the government said if it had been structured a different way, it could have been a different result. That's correct. Say, for example, if the dealers were employees, it would clearly be an on-site expense for them. Right. But it's not because it's a marketing and selling expense. It's because it's an on-site storage expense. And because under 1.263A- The reason for on-site storage exception is because it is a selling situation, isn't it? It's because they would be selling to the final customer. Yeah. So that, in essence, when you say on-site, you're saying, well, because it's on-site, we're not going to apply this storage rule because it's there to sell. Because they would be the ones on-site doing the selling. Yeah. And under the regulations, it lists under storage costs as a common storage cost, rent, taxes, and maintenance. It doesn't define them as selling expenses per se. What the regulations clearly anticipate, it seems to us, is that- Why is there an exception for on-site? What's the reason for that? I think if there weren't, everyone would be deducting the cost of their warehouse, currently deducting the cost of their warehouse, because this is just a timing issue. It's not whether they'll- The basic rule is that if you're storing, like in a warehouse, that has to be capitalized. But there's an exception to that if it's on-site. And why is that? What's the policy reason behind that exception? I'm not sure, other than in terms of looking at the Senate reports, that they wanted a better way to match income and expenses. I guess I don't have a more specific answer for you than that. I'm posing to you the reason is because it is logically a part of the selling expenses. Well- You have it on-site for the purpose of showing to the public these manufactured homes, and so it's really part of the selling thing. It's not like having it in a warehouse. It's there to encourage the people to see it and buy it. Right. The advantage under the regulations goes to the person who's selling the item who has a room in the back of his store that he can pull items out of and sell right then and there directly. But traditionally, things like rent and maintenance and whatnot are not generally considered selling expenses. But they are if they're on-site. I guess the rationale would be because they are so closely related to the disposition of the property at that moment. And so that's why if these dealers had actually been employees, the salaries of those people would have been currently deductible because that expense is so closely related to the disposition of the property. So the only difference really here is the fact that they're not employees and, in fact, are independent and receive title and sell it on. Well, that's not the only reason. I mean, the fact that there is a person between ADI, and I use ADI collectively to refer to all their subsidiaries, between ADI and this final customer. That's the reason, because there is a person. Right, right. It's not necessarily because it's an independent contractor or somebody else. We drew a line there. Right. So that's where it goes. We drew the line. Correct. I don't know. I guess about the policy reason. I don't know. Can you really give a policy reason why you drew the line there instead of on the other side of the policy? Well, I don't think that there's anything in the regulations that explains necessarily what it would be. I don't know that it matters per se. Okay. I wish I understood the policy. We have where, well, we heard a lot about them recently, but I'm not sure we could insist you have a rational policy underlining who we tax and when. Yes. Well, I'm sorry I can't offer more for you there on that point. Let me ask this question. I'm trying to understand it. Okay. Okay. The taxpayer here rents this piece of property. Yes. And he puts a house on there. And as a part of the renting, he pays the rent, and because there's a house on there, a customer comes, looks at the house, and decides to buy a house like it, which comes from the factory to the taxpayer and almost immediately to the independent contractor. That's correct. Now, I'm trying to – the taxpayer, his rent has most of the time nothing to do with the transaction I'm talking about. How and what does he capitalize the rent? I don't understand. Is it capitalized as the overall expense in how many years? Well, I'm not sure in terms of – I'm not an expert in various accounting methods, but it's capitalized and would be deducted as the items are sold. And while ABI says that this regulation works as a mismatch in terms of income and expenses, I think because they could manipulate their inventory, the fact is any business can do that, and so long as they're claiming their deductions in the year that the expense is incurred and they relate that in the year the item is sold, then they can sell down their inventory as they see fit or they can acquire more inventory as they see fit and do their tax planning that way. Well, just explain that regulation a little bit, what it says and why it applies to the example I gave you. The cost of rent itself? Why it's considered – comes under the section which requires capitalization. Well, the properly allocable indirect costs associated with the acquisition and resale of property must be capitalized, and you have to look at the definition of properly allocable, and that means that if the expense directly benefits or is incurred in the performance of resale activities, then it's properly allocable to the property acquired for resale. That's the way the regulation works, and there's never been a dispute in this case that these expenses are all properly allocable to resale activities. ADI has never denied that the expenses were undertaken, that they were incurred or that they were not incurred in the performance of resale activities or that they didn't directly benefit resale activities, and so that's how you get into this regulation in the first place. What if the title didn't pass to the independent salespeople but just passed directly to the customer? Well, it's not only a matter of title passing that led to the result here. The fact is ADI disavowed on a broad level any attribution of retail sales activities to them, and the regulations with respect to on-site storage activities refer to the person selling to the final customer. ADI has disavowed any direction or control of the operation of the lots or the sales activities at the lots. Under the dealer agreement, the dealer assumes, quote, Well, I think it's hard to say. What if they didn't have that system? What if they just had regular salesmen? If they had regular salesmen, I think it would be deductible. If those people on the sales lots were their own employees, it would be because it would be on-site sales, I think, for them. All right. Well, thank you very much. Thank you. I'm glad we all now understand the policy underlying this. Yes, I would first like to, as part of the rebuttal, go to the actual regulation when you were asking whether I had a microphone up again. I'm sorry. I keep forgetting. And speak louder. And speak louder. Yes. I pulled the regulation dealing with the definition of the retail sales facility because this was actually one of the issues on motion for summary judgment in the tax court where it says a retail sales facility is defined as a facility where a taxpayer, not the taxpayer, sells merchandise exclusively to retail customers in on-site sales. And when we get back into plain meaning of statutes, a could mean any taxpayer, but the government's position has always been the regulations construe a as the, which is where tax starts getting complicated because normally the taxpayer's representative is talking about the form of a transaction and the government is talking about the substance of the transaction. And the substance of this transaction is exactly as occurred in Suzy's Zoo, which is the Ninth Circuit had to say you are a producer even though you do not manufacture or produce anything but you have enough control over the production process that you are found to be a producer. Here the taxpayer, a taxpayer, is displaying merchandise for sales to customers. It is being the purpose of the expenses are to sell and not to store. And if we were a retail sale facility, we could store things there and still deduct it. Thank you. Thank you.
judges: Hug, Reinhardt, Bright